THE FOLLOWING ORDER
IS APPROVED AND ENTERED
AS THE ORDER OF THIS COURT:

DATED: December 12, 2018



Susan V. Kelley
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re
Peter Papageorge,
        Debtor.

Chapter 7
Case No. 18-22553-svk

Patrick S. Layng,
U.S. Trustee,
        Plaintiff,
v.

Peter Papageorge,
        Defendant.

Adversary No. 18-2193

**DECISION AND ORDER DENYING THE RELIEF REQUESTED IN THE COMPLAINT AND DETERMINING THAT DEBTOR IS ENTITLED TO DISCHARGE**

The U.S. Trustee filed a complaint to deny the Debtor's discharge pursuant to § 727(a)(4)(A) of the Bankruptcy Code, asserting that the Debtor knowingly and fraudulently made false oaths or omissions in his bankruptcy schedules. The Court held a trial on December 6, 2018. Jonathan V. Goodman appeared for the Debtor and Michelle S. Y. Cramer appeared for the U.S. Trustee. For the reasons that follow and the reasons stated on the record in open Court, the Court denies the relief requested in the U.S. Trustee's complaint and determines that the Debtor is entitled to a discharge.

Pursuant to § 727(a)(4)(A), a plaintiff seeking denial of a debtor's discharge must prove: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *Stamat v. Neary*, 635 F.3d 974, 978 (7th Cir. 2011). "[A] showing of reckless disregard for the truth is sufficient to prove fraudulent intent." *Id.* at 982. Further, in considering whether an omission is material, contrary to Mr. Goodman's assertion at trial, "the issue is not merely the value of the omitted assets or whether the omission was detrimental to creditors." *Id.* (quoting *In re Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992)). Rather, the question is whether the fact "bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property." *Id.* (quoting *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1198 (9th Cir. 2010)); *Fiala v. Lindemann (In re Lindemann)*, 375 B.R. 450, 470-71 (Bankr. N.D. Ill. 2007) (making the same statement and noting that a "false oath may be material even though it does not result in any detriment or prejudice to the creditor.").

Ms. Cramer argued that the Debtor's lack of disclosure ought to result in denial of his discharge. As the Seventh Circuit has noted, the "successful functioning of the Bankruptcy Code hinges both upon the bankrupt's veracity and his willingness to make a full disclosure." *Stamat*, 635 F.3d at 983. At trial, the U.S. Trustee identified three main areas of nondisclosure in the case. The largest issue involved the Debtor's failure to disclose a diamond pendant on his schedules and his failure to disclose his wife's sale of jewelry and receipt of $1,320. The Debtor testified that he was not familiar with Mrs. Papageorge's jewelry, and Mrs. Papageorge's testimony confirmed this. He also stated that he did not know about the sale of the jewelry before filing the bankruptcy case. Mrs. Papageorge had filed a legal separation action before the

Debtor filed his bankruptcy case. She testified that if the Debtor had asked her for assistance in describing the jewelry, she would not have helped because she had already done the work once.

The Debtor explained that he obtained information about the jewelry from draft schedules prepared by Attorney Bruce Lanser after the Papageorges met with him in late 2016. Mrs. Papageorge explained that she had her jewelry appraised in 2016 and provided this information to Mr. Lanser, along with the Papageorges' insurance policy that listed the jewelry and an appraisal from 2008. The jeweler, Eric Racoma, identified the 2016 appraisal as a document he prepared. The Debtor and Mr. Lanser testified that the Papageorges did not necessarily intend to file bankruptcy when they consulted Mr. Lanser. Mr. Lanser stated that his practice was to prepare draft schedules to familiarize himself with a client's financial affairs in order to discuss the client's options, even if the client's primary purpose was not to file bankruptcy. Thus, the draft schedules were not necessarily prepared for the purpose of being filed, and Mr. Lanser would have likely needed additional information to complete and finalize the schedules if the Papageorges were going to file bankruptcy. Mrs. Papageorge testified that she did not review the draft schedules for accuracy when she received them from Mr. Lanser. She determined that the Debtor's filed schedules omitted a diamond pendant or "enhancer" and inaccurately described several other pieces of jewelry.

Admittedly, the Debtor could have determined that the draft schedules omitted the piece of jewelry based on a review of his homeowners insurance policy and could have questioned Mrs. Papageorge about any sale of jewelry. However, under the circumstances of the case, the Debtor's reliance on his wife's information and lack of knowledge about the sale of jewelry does not show a reckless disregard for the truth. The Debtor was not familiar with the jewelry. He relied on the list of jewelry from the draft schedules, which was based on information his wife

3

provided, and because the parties were estranged, he was unable to ask further questions of his wife.

The U.S. Trustee's second area of concern involved the Debtor's sale of business assets and new relationship with the purchaser. The Debtor testified that he was the sole owner of a food and drink vending and service company called Century Automatic Services that was closed effective February 28, 2018. Because the business still had accounts receivable and he needed money to pay his bankruptcy attorney's retainer, the business sold several "Coffee Service agreements" for $2,000 to Mid America Wealth Management Services, LLC dba p2o Water Technology LLC ("Mid America"). The Debtor did not disclose this transfer. He explained that the assets belonged to the business, and that was why he did not disclose the transfer. However, he did use the money to pay his attorney.

After the sale of the accounts to Mid America, the Debtor testified that he continued to service them as an independent contractor. Mid America made the lease payments on a vehicle he used and paid for the insurance and gas. It also paid for a term life insurance policy for the Debtor. The U.S. Trustee asserted these benefits constituted income. The Debtor explained that his arrangement with Mid America was that he would receive a portion of any profit from the accounts at the end of the month, but he had not received any funds before filing the bankruptcy case. Presumably, the Debtor anticipated that he would receive payments from Mid America in the future, but the Debtor's schedules did not disclose anything about the independent contractor relationship. The Debtor gave conflicting answers as to whether Mid America made the lease payments prior to the petition date but also testified that he understood Mid America's payment of "expenses" to constitute a necessary part of doing business, not as income to him. This was credible, given the Debtor's testimony that he had no formal training in any profession and had

4

completed high school and a couple of college classes.  Moreover, at the time the case was filed, March 26, 2018, the relationship was still relatively new, and the Debtor had not yet received any money from Mid America for his work as an independent contractor.  At most, the Debtor failed to disclose that he anticipated income.

Finally, the Debtor failed to disclose a Tri City bank account.  The Debtor testified that he had a joint account with his wife and his wife had a personal account, but he did not have a personal account of his own before he opened the Tri City account.  He initially was confused about when he opened the account, though he later determined it was before the bankruptcy filing.  He deposited the check for the transfer of Century Automatic's business assets into the account and then wrote a check to Mr. Goodman.  He believed he told Mr. Goodman about the account and would have provided information about the account, like a bank statement, if he had been asked to do so.  Here, the Debtor's failure to disclose the bank account was not material.  He stated he never thought of the account because it had only been open for a few weeks, there was only $100 in it, and he had only used it to pay his legal fees.

Denial of a debtor's discharge is "akin to financial capital punishment" and is "reserved for the most egregious misconduct by a debtor."  *Wan Ho Indus. Co., Ltd. v. Hemken (In re Hemken)*, 513 B.R. 344, 353 (Bankr. E.D. Wis. 2014) (quoting *Buckeye Ret. Props. of Ind., LLC v. Tauber (In re Tauber)*, 349 B.R. 540, 545 (Bankr. N.D. Ind. 2006)).  Although it was a close case, based on the evidence presented, the Court concluded the U.S. Trustee did not meet the burden of proof in this adversary proceeding.  The Court recognized that the Debtor's schedules should have contained the information the U.S. Trustee identified.  However, given the Debtor's lack of knowledge about the jewelry and lack of sophistication in understanding that Mid America's payment of expenses as part of the independent contractor relationship could

5

Case 18-02193-svk    Doc 18    Filed 12/12/18    Page 5 of 6

potentially constitute income, the Court determined that the U.S. Trustee had not established a pattern of reckless disregard for the truth and certainly not that the Debtor acted with fraudulent intent.

However, the Debtor should amend his schedules to reflect the facts as shown at trial. The Debtor should amend his schedules to list the diamond pendant and bank account and disclose Mrs. Papageorge's transfer of jewelry. Any nonexempt assets should be turned over to the Trustee. The Debtor's Statement of Financial Affairs should also be amended to disclose the relationship with Mid America and to state that the source of some of the funds paid to Mr. Goodman prior to the filing of the case was the Debtor's business.

IT IS THEREFORE ORDERED: the relief requested in the complaint is denied, the complaint is dismissed, and the Debtor is entitled to a discharge in this bankruptcy case.

#####